IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAREN ANN ARNDT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-01328-N |
| | § | |
| WELLS FARGO BANK NA, | § | |
| | § | |
| Defendant. | § | |

**<u>ORDER</u>**

This Order addresses Defendant Wells Fargo Bank NA's ("Wells Fargo") motion to dismiss [16] and Karen Ann Arndt's motion to appoint an attorney ad litem for Kenneth Arndt [24]. The Court denies the motion to dismiss as to the issue of capacity but otherwise grants the motion, and denies the motion to appoint an attorney ad litem.

## I. ORIGINS OF THE DISPUTE

On January 12, 2007, Paul and Kenneth Arndt signed a Texas Home Equity Affidavit and Agreement (the "Agreement") for real property located at 8405 Portsmouth Drive, Rowlett, Texas 75088. On February 11, 2011, Dallas County Probate Court No. 3 received an Application to Probate the Estate of Paul Arndt Deceased under Cause No. PR-11-00447-3. On March 2, 2011, the Probate Court issued Letters Testamentary to Karen Ann Arndt as the Independent Executor of the Estate of Paul Arndt. In November 2014, Wells Fargo filed an application in the 162nd Judicial District Court of Dallas County seeking an order allowing it to foreclose on the real property located at 8405 Portsmouth Drive pursuant to the

Agreement. On March 6, 2015, Karen Arndt filed a lawsuit in the 116th Judicial District Court of Dallas County under Cause No. DC-15-02566 to stop Wells Fargo's expedited foreclosure. Wells Fargo removed the lawsuit to federal court on April 29, 2015. Arndt filed a motion to remand the case to state court on May 28, 2015, which the Court subsequently denied on September 9, 2015. On March 25, 2016, Arndt filed an amended complaint. On April 29, 2016, Wells Fargo filed the present motion to dismiss.

## II. THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts

produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III.  THE COURT DENIES WELLS FARGO'S MOTION TO DISMISS ARNDT'S LACK OF CAPACITY CLAIMS

In Plaintiff's Amended Complaint, Arndt alleges that in 2006 her son Kenneth's physician diagnosed him as "mentally retarded," "unable to read or write," and "unable to make decisions for himself."  Pl.'s First Am. Compl. 3 [12]; Pl.'s First Am. Compl. 15, Ex. 5 [12].  Further, Arndt submits as evidence Kenneth's allegedly child-like signature on the Agreement.  As such, Arndt alleges that when Kenneth signed the Agreement, he "lacked the requisite mental capacity to sign such a document . . . or understand the consequences of the underlying obligations thereof."  *Id*. at 4.  Arndt thus argues that Kenneth's obligations under the agreement "should be excused and dismissed," and that the Court should stop Wells Fargo's expedited foreclosure.  *Id*.

Wells Fargo argues that Arndt's allegations are "sparse" and that she "has not stated a claim to avoid the contract."  Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 11 [16].  Wells Fargo argues that "mere illiteracy does not relieve a contracting party of the consequences of his agreement," and that if "the other party has no reason to know of the incompetency, performance in whole or in part may so change the situation that the parties cannot be restored to their previous positions or may otherwise render avoidance inequitable."  *Id*.  Wells Fargo accordingly moves to dismiss the complaint under the theory that Arndt did not plead mental incapacity sufficient to avoid the contract.

There exists a "presumption of mental competency to enter into a contractual agreement." *Paige-Hull v. Wofford*, 2008 WL 4274504, at *6 (N.D. Tex. 2008).  Thus, the burden of proof rests with the party asserting a lack of mental capacity.  *See id.*  To determine whether a person has mental capacity sufficient to execute a document, the standard is "whether the person signing it appreciated the effect of what he was doing and understood the nature and consequences of his acts and the business he was transacting."  *Id.*  "Mental capacity may be evidenced circumstantially by evidence of (1) a person's outward conduct, manifesting an inward condition; (2) preexisting external circumstances tending to produce a special mental condition; and (3) prior or subsequent existence of a mental condition from which its existence at the time in question may be inferred."  *Id.*  Although the ultimate question at hand is whether mental capacity existed at the time of signing or execution, "evidence of the [contracting party's] state of mind at other times can be used to prove his state of mind on the day the document was executed provided the evidence demonstrates a condition affecting his mental capacity was persistent and likely present at the time the document was executed."  *Id.*  However, evidence "that creates only a suspicion of mental incapacity is not sufficient to support a finding of lack of mental capacity."  *Id.*

Although mere illiteracy does not relieve a contracting party of the consequences of his agreement, a contracting party "must . . . be held to have known and fully comprehended the legal effect of the contract."  *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex. App.–El Paso 2005, orig. p'ceeding).  Kenneth Arndt's signature is not, on its own, enough to prove illiteracy, and illiteracy alone is not enough to excuse a contracting party from

responsibility under the contract. However, evidence that Kenneth Arndt's physician diagnosed him as "mentally retarded" and "unable to make decisions for himself" in 2006 is enough to infer that he likely was of the same state of mind on the day the document was executed. If Kenneth Arndt was mentally retarded and unable to make decisions for himself at the time of the contract, that, on its face, shows that he did not fully comprehend the legal effect of the contract. Arndt has thus sufficiently pled that Kenneth did not appreciate the effect of what he was doing nor did he understand the nature and consequences of his acts and the business he was transacting.

Wells Fargo argues that, even if Arndt has shown incapacity, her argument still fails because the originating lender had "no reason to know of any purported incapacity" and because the contract has already been partially performed. Def.'s Reply in Supp. of Mot. to Dismiss 6–7 [23]. "If the contract is made on fair terms and the other party has no reason to know of the incompetency, performance in whole or in part may so change the situation that the parties cannot be restored to their previous positions or may otherwise render avoidance inequitable. The contract then ceases to be voidable." RESTATEMENT (SECOND) OF CONTRACTS § 15 cmt. f (Am. Law Inst. 1981). Construing the complaint in the light most favorable to the plaintiff, it is plausible that Wells Fargo should have known of Kenneth Arndt's incompetency at the time of contracting given that he has been diagnosed as "mentally retarded," "unable to read or write," and "unable to make decisions for himself." Arndt has met the facial plausibility standard. The Court thus denies Wells Fargo's motion to dismiss on the issue of capacity.

## IV.  THE COURT GRANTS WELLS FARGO'S MOTION TO
## DISMISS ARNDT'S JURISDICTIONAL CLAIMS

After filing her original petition on March 6, 2015 to stop expedited foreclosure by Wells Fargo, and after Wells Fargo removed the case to federal court, Arndt moved to remand to state court on May 28, 2015.  In the motion to remand, Arndt argued that this Court lacks subject matter jurisdiction over the dispute because of the "probate exception" to federal jurisdiction, or alternatively because Wells Fargo waived its right to remove the case, and that a state probate court would rightfully have jurisdiction over the case.  On September 9, 2015, the Court denied Arndt's motion to remand because  Arndt properly filed this lawsuit in a court of general jurisdiction (invoking an exception to the probate exception) and because Wells Fargo did not waive its right to remove the case.  *See* Order Den. Pl.'s Mot. to Remand 1–2 [8].

Nonetheless, in her amended complaint, Arndt again argues that the Court should remand the case to state probate court.  Additionally, Arndt includes a number of arguments that are "estate administration issue[s] proper for the Texas Probate Court," including that Kenneth Arndt has superior homestead rights to the property under Texas Estates Code § 351 and that Wells Fargo failed to properly file, authenticate and sue on its claim with the Texas Probate Court.  Because the Court has already decided that it properly has jurisdiction over this dispute, the Court grants Wells Fargo's motion to dismiss Arndt's jurisdictional claims.[1]

---

[1]The Court thus denies Arndt's request that it reconsider its prior jurisdictional ruling. *See* Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss 5 [22].

## V.  THE COURT GRANTS WELLS FARGO'S MOTION TO DISMISS
## CLAIMS ARISING UNDER SECTION 50 OF THE TEXAS CONSTITUTION

Arndt alleges that "Kenneth Arndt has rights in his homestead which are guaranteed by Section 50 of the Texas Constitution," and which Wells Fargo may not violate by dispossessing Kenneth of his home. Pl.'s First Am. Compl. 5 [12].  However, Arndt does not specify what provision of Section 50 has been violated or in what way it has been violated. Wells Fargo argues that "Plaintiff has not put Wells Fargo . . . on notice of any alleged violation of Section 50 of the Texas Constitution."  Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 13 [16].  "In other words, Plaintiff does not even directly assert that a violation *has actually occurred*, but merely suggests that Kenneth Arndt has certain rights that are guaranteed."  *Id.*

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Arndt's Section 50 claim fails to present any facts or evidence; it simply asserts that Kenneth Arndt has rights that Wells Fargo may not violate.  However, a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer*, 484 F.3d at 780.  Without providing further details of what guaranteed rights Kenneth Arndt possesses and how Wells Fargo has violated them, Arndt has at most presented a conclusory allegation.  As such, the Court grants Wells Fargo's motion to dismiss on the issue of the Section 50 claim.  The Court, however, grants Arndt leave to replead its Section 50 claim with specificity.

## VI.  THE COURT GRANTS WELLS FARGO'S MOTION TO DISMISS ARNDT'S "SHOW-ME-THE-NOTE" CLAIMS

Arndt alleges in her amended complaint that Wells Fargo "has failed to prove that it is the holder or assignee of the alleged Note underlying the claim that it made in the foreclosure lawsuit," and that without such proof, Wells Fargo "lacks standing and jurisdiction to assert its claim."  Pl.'s First Am. Compl. 6 [12].  Wells Fargo argues that this allegation is a form of the "show-me-the-note" argument, which has been repeatedly rejected in Texas.  Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 16–17 [16].  As such, Wells Fargo argues that Arndt's allegation fails.

The "show-me-the-note" argument claims that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure."  *McLemore v. CitiMortgage, Inc.*, 2013 WL 775350, at *4 (N.D. Tex. 2013) (quoting *Wells v. BAC Home Loan Servicing, L.P.*, 2011 WL 2163987, at *2) (W.D. Tex. 2011)).  However, this theory has been "repeatedly rejected in this circuit as having no merit."  *See id.* Texas courts do not conflate foreclosure with the enforcement of promissory notes – "foreclosure is an independent action against the collateral that enforces the deed of trust, not the underlying note."  *Id.*  (quoting *Reardean v. CitiMortgage, Inc.*, 2011 WL 3268307, at *3 (W.D. Tex. 2011)) (internal citations omitted).  Wells Fargo need not show proof that it is the holder or assignee of the note underlying its claim for foreclosure.  "Courts have held that the Texas Property Code does not require a mortgagee to produce proof of ownership of the original note or deed of trust before conducting a non judicial foreclosure sale."  *Id.*  Accordingly, the Court grants Wells Fargo's motion to dismiss Arndt's claims based on the allegation that

Wells Fargo has failed to prove that it is the holder or assignee of the note in the foreclosure lawsuit. *See id.* at *5 ("Plaintiff's allegation that [Defendant] lacked authority to foreclose because it was not the owner or holder of the note and deed of trust cannot support any claim against Defendants as a matter of law.").

## VII.  THE COURT DENIES ARNDT'S MOTION TO APPOINT AD LITEM

In her amended complaint, Arndt asks the Court to immediately appoint an ad litem to represent the interests of Kenneth Arndt. *See* Pl.'s First Am. Compl. 4 [12].  Arndt also filed a separate motion to appoint an ad litem [24] to represent Kenneth Arndt on June 22, 2016.  "The court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."  FED. R. CIV. P. 17(c)(2).  In her motion, Arndt, as Independent Executor of the Estate of Paul Arndt and as Next Friend of Kenneth Arndt, requests an attorney ad litem for Kenneth Arndt to "prosecute his particular interests and champion his cause."  Pl.'s Mot. to Appoint Att'y Ad Litem 1 [24].  The Court notes that there is a difference between appointing an attorney ad litem and a guardian ad litem[2], but the Court does not find a need to appoint either because Arndt is already serving as next friend of Kenneth Arndt.  The Court finds no need to appoint an attorney ad litem for Kenneth Arndt because there is no evidence of a conflict of interest between the interests of Kenneth and Karen Arndt, and there is no evidence that Arndt is incapable of or unwilling to prosecute Kenneth Arndt's interests.  *See Rice ex rel. CIR v.*

---

[2]A guardian ad litem is a substitute party, while an attorney ad litem takes "actions . . . to prosecute the minor's claims."  *See Metropolitan Life Ins. Co. v. Brown*, 2002 WL 31039725, at *7 (N.D. Tex. 2002).

*Cornerstone Hosp. Of West Monroe, L.L.C.*, 589 Fed. Appx. 688, 691 (5th Cir. 2014) ("Rule 17(c) 'gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling, or refuses to act or has interests which conflict with those of the infant or incompetent.'") (quoting *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989)).  Further, there is no need to appoint a guardian ad litem for Kenneth Arndt.  "As a general matter, 'a federal court cannot appoint a guardian *ad litem* in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state.'" *Rice ex rel. CIR.*, 589 Fed. Appx. at 691.  Arndt is appropriately acting as next friend of Kenneth Arndt. Accordingly, the Court denies the motion.

### VIII.  THE COURT DENIES WELLS FARGO'S MOTION TO DISMISS ARNDT'S REQUEST FOR ACCOUNTING

Arndt's amended complaint claims that Wells Fargo "has failed to maintain accurate and historical records of payments and charges against the loan," and demands an accounting from Wells Fargo.  Pl.'s First Am. Compl. 5 [12].  Wells Fargo argues that the Court should dismiss the demand for accounting because it is a remedy rather than a cause of action and as such "cannot stand as an independent claim."  Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 15 [16].  Wells Fargo does not argue that the Court should dismiss the request for accounting on any other grounds.  Arndt's request for an accounting does not have to be a cause of action in order for Arndt to plead it as a remedy accompanying her remaining causes

of action and requests for relief.  As such, the Court denies Wells Fargo's motion to dismiss Arndt's request for an accounting.

### CONCLUSION

The Court denies Wells Fargo's motion to dismiss Arndt's lack of capacity claims and request for accounting.  The Court grants Wells Fargo's motion to dismiss Arndt's jurisdictional claims, the Texas Constitution Section 50 claim, the "show-me-the-note" claim, and the request for reconsideration of the motion to remand.  The Court grants Arndt leave to replead her Section 50 claim within twenty-one (21) days of this Order.  The Court denies Karen Ann Arndt's motion to appoint attorney ad litem for Kenneth Arndt.

Signed October 18, 2016.

David C. Godbey
United States District Judge